STEVENSON, J.
Lori Kaplan (the “decedent”) died after suffering fatal injuries in a car accident that occurred on November 16, 1999, in the City of Boca Raton, Florida.[1] The decedent was reportedly coming from an appointment with her psychiatrist, Dr. Sharman Alien, appellee, when the accident occurred. At the time of her death, the decedent was also being treated by Dr. Linda Sherby, a psychologist.
Believing that the circumstances of the decedent’s death suggested suicide, and perhaps professional malpractice on the part of her psychiatrist, appellant, Leonard Kaplan, in his capacity as personal representative, requested copies of the decedent’s medical records from Dr. Allen. Dr. Allen declined to provide the medical records, citing statutory confidentiality under section 456.057(4), Florida Statutes (2001), and instead, provided a summary of the decedent’s treatment.
Without instituting a cause of action against Dr. Allen, Kaplan filed a complaint for pure bill of discovery in the circuit court, stating that he needed copies of the records and needed to depose Dr. Allen to determine whether the estate had a non-frivolous basis to bring a claim against him. Dr. Allen filed a motion to dismiss the complaint for pure bill of discovery, *1176 arguing that the complaint sought privileged documents and was deficient as a matter of law. The circuit court granted the motion to dismiss. Because we hold that the trial court did not err in dismissing the complaint, we need not address Dr. Allen’s claim that the records were confidential since that issue goes only to the extent of the relief that would be provided under the pure bill of discovery.
In order to be entitled to a pure bill of discovery, Kaplan must allege some circumstantial evidence of negligence adequate to justify the good faith filing of a negligence action. See Adventist Health Sys./Sunbelt, Inc. v. Hegwood, 569 So.2d 1295 (Fla. 5th DCA 1990). In Mendez v. Cochran, 700 So.2d 46 (Fla. 4th DCA 1997), this court stated:
We recognize that a bill of discovery is available as an aid in bringing or defending an action about to be commenced. It may be used to identify potential defendants and theories of liability and to obtain information necessary for meeting a condition precedent to filing suit. However, it may not be used “as a fishing expedition to see if causes of action exist.” Publix [Supermarkets, Inc. v. Frazier, 696 So.2d 1369, 1371 (Fla. 4th DCA 1997) ]. Neither is it available simply to obtain a preview of discovery obtainable once suit is filed.
Id. at 47 (citations omitted); see also Trak Microwave Corp. v. Culley, 728 So.2d 1177 (Fla. 2d DCA 1998); Publix Supermarkets, Inc., 696 So.2d at 1370-71.
Nothing in the record demonstrates a justification for Kaplan’s pure bill of discovery. Adventist Health System[2] is distinguishable on the basis that, there, the plaintiff alleged that there was circumstantial evidence of negligence sufficient to justify the good faith filing of a medical malpractice claim. See 569 So.2d at 1296-97. Also, the plaintiffs medical experts alleged that there was some reason to believe that there was medical malpractice, but could not specifically “point it out” without deposing the doctors who treated the child at the hospital. Id. at 1296 n. 1.
Here, the record contains allegations suggesting only a possibility that some cause of action might exist against Dr. Allen. This is insufficient to justify the invocation of the “relatively rare” equitable pure bill of discovery. See JM Family Enters., Inc. v. Freeman, 758 So.2d 1175, 1176 (Fla. 4th DCA 2000). The record as it exists shows no more than that the tragic death of the decedent was due to an improper lane change; appellant may not obtain a pure bill of discovery as an investigative tool “to seek information that might uncover a potential claim.” Mendez, 700 So.2d at 47. Because of the speculative nature of Kaplan’s claims, the trial court did not err in dismissing the complaint for pure bill of discovery.
AFFIRMED.
WARNER and TAYLOR, JJ, concur.

. The Traffic Homicide Investigation conducted by the Boca Raton Police Department reported that the accident occurred in the following manner: In the area of the accident, Yamato Road and Blue Lake Drive, is a six-lane highway consisting of a left, center and right through lane. In the 900 block of West Yamato Road, the left through lane ends and becomes a left turn lane and reduces the number of through lanes to two. Aaron John Singer, the other car accident victim, reported that the decedent was traveling westbound in the left turn lane at a high rate of speed, while he was traveling in the left through lane. The decedent swerved into the left through lane when the left turn lane ended, which resulted in both cars colliding. The decedent’s vehicle then struck a concrete curb, became airborne and rolled over several times before sliding down an embankment into a ditch. Another witness stated that the decedent accelerated even more when she saw that she "was running out of lane.” The same witness reported another version of how the accident occurred: that both cars entered the left through lane at the same time, which resulted in the accident. The decedent was transported to the Delray Medical Center and was pronounced dead later that day. The toxicology report showed no evidence of drugs (prescription or otherwise) or alcohol in the blood of the decedent or Singer.

. In Adventist Health System, the Fifth District found that issuing a pure bill of discovery to the plaintifftmother whose child died while being treated in the hospital was proper.